**HELLENIC LINES LIMITED, Plaintiff,**

**v.**

**UNITED STATES of America and Commodity Credit Corporation, Defendants.**

**No. 67 Civ. 396.**

United States District Court, S. D. New York.

Aug. 9, 1972.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Renato C. Giallorenzi, New York City, for plaintiff.

**1386**

Whitney North Seymour, Jr., U.S. Atty., S.D.N.Y., by Gilbert S. Fleischer, New York City, Admiralty, for defendants.

EDELSTEIN, Chief Judge.

## OPINION

In this action plaintiff, Hellenic Lines, Ltd., a Greek corporation, seeks to recover as damages from the United States the sum of $17,117.70 for the alleged illegal detention of its vessel, the S. S. HELLENIC SAILOR. In March 1963, the S. S. HELLENIC SAILOR was booked by the United States Department of Agriculture, as an agent for the Agency for International Development (AID), Department of State, for the carriage of 3,000 metric tons of bulk yellow corn from Galveston, Texas, to Chalna, East Pakistan. The cargo was made available to the Government of Pakistan under a program of the Agency for International Development, pursuant to Title II, Public Law 480, 83rd Congress (7 U.S.C. § 1721).

The S. S. HELLENIC SAILOR left Galveston on or about April 3, 1963, and arrived at Chalna on July 13, 1963. Discharge of the cargo was completed on July 29, 1963. It is not disputed that there was a delay in discharging the cargo of 11 days, 9 hours and 53 minutes. Plaintiff claims the value of such detention is $17,117.70.

At the trial of this action Mr. Pericles Callimanopulos, the General Manager of plaintiff Hellenic Lines, Ltd., testified that it first sought to recover its claim for detention from the Government of Pakistan, the consignee of the cargo that was allegedly primarily responsible for the delay in unloading the vessel. The bill of lading issued by Hellenic Lines, Ltd. on the S. S. HELLENIC SAILOR for the yellow corn cargo lists as shipper "USDA ASCS Agents for Agency for International Development, and as consignees Government of East Pakistan." After attempts to recover the alleged claim for detention from the Government of East Pakistan proved

unsuccessful, plaintiff then sought to recover its claim for detention from the United States Department of Agriculture as shipper. Plaintiff sent its invoice for $17,117.70 to the Department of Agriculture on September 28, 1963. Plaintiff alleges that in July 1965 defendants orally agreed to pay the plaintiff in Pakistani rupees. By an exchange of letters dated November 16 and November 30, 1965, received in evidence at the trial, plaintiff seeks to spell out a settlement agreement upon which it now sues. The plaintiff alleges that the defendant, United States of America, then refused to pay any part of the sum allegedly due.

■ The court finds, after a trial of this action, that the plaintiff has failed to prove by a preponderance of the credible evidence that a settlement agreement was reached between plaintiff and the United States. Mr. Callimanopulos testified that in March of 1964 active negotiations for payment were taking place with Mr. Dan Tierney, Director, Program Operations Division, Department of Agriculture. The efforts of Mr. Tierney at this time were directed towards getting the Pakistanis to pay their claim. On September 17, 1964, Mr. Tierney wrote to the Economic Counselor of the Embassy of Pakistan in Washington, D. C. in an effort to obtain payment for the plaintiff. On September 21, 1964, Mr. Callimanopulos wrote to Mr. Tierney stating that he hoped that Mr. Tierney's efforts with the Pakistanis would prove successful. However, plaintiff asked the United States to settle the claim if these efforts failed. On June 29, 1965, the plaintiff again wrote the Department of Agriculture · to advise them it had not yet received payment for its detention claim. Thereafter, some time before the end of July 1965 a discussion was had with Mr. Tierney. Mr. Callimanopulos testified that Mr. Tierney stated at the discussion in July that there was no hope of obtaining payment from the Pakistanis. Mr. Callimanopulos further testified that Mr. Tierney promised that the United States Depart-

ment of Agriculture would pay the detention claim. Plaintiff alleges that this statement by Mr. Tierney gave rise to an oral agreement to pay the plaintiff. Plaintiff has attempted to prove that this agreement of settlement was reduced to writing in letters exchanged in November 1965 between plaintiff and Mr. Tierney. Mr. Tierney's letter is dated November 16, 1965, and plaintiff's letter is dated November 30, 1965.

These letters, together with a letter of September 24, 1965, from Mr. Callimanopulos to his agent, Mr. Stewart, do not support a conclusion of law that a settlement agreement was consummated in July 1965 with the United States. The letter of September 24, 1965, from Mr. Callimanopulos to Mr. Stewart shows that no "meeting of the minds" occurred in July 1965. This letter requested that Mr. Stewart see Mr. Tierney and advise him on behalf of the plaintiff that if the Department of Agriculture would not settle the claim then no alternative existed but to commence a lawsuit. Mr. Callimanopulos further instructed Mr. Stewart to have Mr. Tierney give an answer as to whether or not the Department of Agriculture would pay this claim.

The letter of November 16, 1965, from Mr. Tierney stated, in substance, that he discussed the matter with the Agency for International Development and although the Government of Pakistan is primarily liable, he thought it would be possible for the Commodity Credit Corporation to advance funds in Pakistani rupees for payment of this claim. In a letter dated November 30, 1965, the plaintiff requested to know if it would be possible to settle this claim in Egyptian currency. There is no evidence to indicate that any further correspondence occurred. Construing the letters exchanged after July 29, 1965, in the most

favorable light for the plaintiff, the most that can be said of them is that there was a suggestion of the possibility of a settlement between plaintiff and the United States. The suggestion of the possibility of a settlement can not be interpreted to mean that the parties reached a valid settlement agreement.

Even if this court were to find that a settlement agreement was concluded between the plaintiff and defendants in July 1965, the plaintiff would still fail to prevail in this action. The suit is time-barred, and therefore this court does not have subject matter jurisdiction. Also, the plaintiff has failed to establish the authority of an executive officer of the United States Government to enter into a valid settlement agreement on behalf of the United States.

Jurisdiction of this court is based upon the provisions of the Suits in Admiralty Act, 46 U.S.C. § 741. An action under this Act must be brought within two years of the time the action arises. 46 U.S.C. § 745.[1]

Earlier, on the defendant's Rule 12(b) motion, F.R.Civ.P., for an order dismissing the complaint on the ground that suit was not brought within the 2-year period of limitations contained in the Suits in Admiralty Act, 46 U.S.C. § 745, Judge Herlands ruled that "the original claim (that is, the one for detention) is clearly time-barred." This court concurs in Judge Herlands' ruling. Plaintiff was granted leave to file an amended complaint pleading as a cause of action suit on the alleged settlement agreement. Plaintiff amended its complaint.

This court is of the opinion that the suit on the alleged settlement agreement is time-barred. It appears that plaintiff is suing on a settlement agreement allegedly entered into the early part of July 1965.[2] Plaintiff asserts that the al-

---

1. 46 U.S.C. § 745 provides in pertinent part: "Suits as authorized by this Chapter may be brought only within two years after the cause of action arises . . . ."

2. Plaintiff does not clearly state whether this suit is based on the alleged settlement agreement itself or the alleged breach of the agreement. The alleged agreement occurred in early July 1965, while the alleged breach occurred in October 1966. If plaintiff's suit is predicated on the settlement agreement, it had, under its theory, until early July 1967 to institute suit. If the date of the alleged breach

leged settlement agreement was effected prior to the expiration of the limitation period for suits against the United States, and is thus not time-barred. The limitation period for the detention claim expired on July 29, 1965. Plaintiff commenced suit on January 30, 1967, and an amended complaint was filed June 21, 1968. Plaintiff claims that the effecting of the alleged settlement agreement prior to July 29, 1965, (the expiration date for the detention claim), renders suit on the settlement agreement timely. Under plaintiff's theory it had until early July 1967 within which to commence proceedings.

■ Plaintiff's theory is a transparent attempt to avoid the time-bar provisions of the Suits in Admiralty Act. This attempt fails. Plaintiff, in effect, is suing for damages that resulted from the detention of its vessel. The cause of action for detention and the damage suffered thereby arose when the detention occurred.

Plaintiff's theory that suit on the alleged settlement agreement is not time-barred is similar to the one presented in States Marine Corp. of Delaware v. United States, 283 F.2d 776 (2d Cir. 1960) (Waterman, J.). States Marine was a libel for breach of maritime contract brought by a time-charterer of a vessel against the United States. The space-charter contract provided that any claim for damages to the vessel by the defendant or its agents would be submitted to administrative adjudication. Pursuant to the contractual provisions libellant administratively submitted its damage claims. These were eventually disallowed by the Armed Services Board of Contract Appeals (ASBCA), in July 1957. Damage to the vessel occurred in December 1954, and suit was brought in September 1957.

The defendant in States Marine argued, as does the defendant here, that the court lacked jurisdiction over the

subject matter because the libellant had not instituted suit, as required by 46 U.S.C. § 745, within two years from the time the damage allegedly occurred. Libellant in States Marine asserted that it was not suing on the original claim for damages itself, but rather, for the refusal by ASBCA to pay the claim for damages. In other words, suit was brought on an adverse administrative determination. Judge Waterman, affirming the dismissal of the action, held that because the libel was not commenced until after more than two years had elapsed from the occurrence of the damage complained of, the court lacked jurisdiction. The court stated that the cause of action arose when the damage occurred to the vessel. Administrative refusal to pay on the claim for this damage did not create a new cause of action distinct and separate from the cause of action for actual damage to the vessel. Judge Waterman stated that it was "[s]purious to maintain that a new cause of action was created."

In McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), the Supreme Court, in a situation similar to States Marine, and a more appealing one than that, held that a Congressional Declaration, (The Clarifications Act of March 24, 1943, 50 U.S.C.A. Appendix § 1291(a)), which gave seamen the right to sue the United States for personal injuries " . . . administratively disallowed in whole or in part . . . " did not extend the period of limitation beyond the two-year time-bar period. The period of limitation must be measured from the time the injury occurred and not from the date of the administrative disallowance of the claim.

If a Congressional mandate to submit a personal injury claim to administrative review, McMahon, and a contractual provision to submit a property damage claim to administrative review, States Marine, can not affect the time-bar, it is

of agreement is used, plaintiff had until October 1968 to institute suit. For purposes of determining the applicability of the time-bar provision of the Suits

in Admiralty Act, it is not crucial whether the alleged date of agreement or breach is used.

but common sense that the alleged settlement agreement in the case at bar can not affect the time-bar provision of the Statute of Limitations.

 Plaintiff, in the alternative, asserts that by allegedly conducting settlement discussions on the claim in question the Department of Agriculture effectively waived or extended the time-bar imposed by the statute. This is but a further futile attempt to avoid the statutory time-bar. The two year period of limitations under the Suits in Admiralty Act is a jurisdictional limit and cannot be waived, modified or extended by the parties. *States Marine, supra;* Isthmian Steamship Co. v. United States, 302 F.2d 69 (2d Cir. 1962). Acknowledgments and promises made by executive officers of the government without express or clearly implied authority will not operate to suspend or extend the period within which a claim against the government must be filed. Huntington Steel Corp. v. United States, 153 F.Supp. 920 (S.D.N.Y. 1957). Congress alone can remove the bar of the statute as to a claim against the United States. There is no proof in this case that Congress expressly granted or clearly implied a grant of authority in any executive officer of the United States Government to waive, extend or modify the statutory time period.

It is the judgment of this court that plaintiff's complaint be dismissed.

In view of the above the court does not have to deal with the defendant Commodity Credit Corporation's claim that it is not a proper party to this lawsuit.

■ Plaintiff's motion to reopen this case is denied. The court has determined that no settlement agreement was ever reached. Therefore, to permit plaintiff to reopen its case in order to establish the authority of an executive officer in the United States Government would not in any way affect the result. In any event, this motion would fail because plaintiff has not shown that it has been diligent in having available the necessary witnesses and documents required to prove its case.

The foregoing constitute the findings of fact and conclusions of law.

So ordered.